HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD KINGSBERRY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CHICAGO TITLE INSURANCE COMPANY,

Defendant.

Case No. C07-5706RBL

ORDER GRANTING MOTION TO DISMISS ON THE PLEADINGS

THIS MATTER is before the Court on Defendant's Motion to Dismiss [Dkt. #28]. Plaintiff alleges that defendant title insurer violated a provision of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et. seq. ("RESPA"). Plaintiff, a Washington resident, brings a putative class action against defendant seeking to represent class members in Washington, Oregon, Michigan and Tennessee. Defendant moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Dkt. #28]. In its motion, defendant attacks the complaint on the following grounds: (1) Plaintiff lacks standing to make claims for members of the putative class who live outside Washington, (2) Washington law does not support plaintiff's claims because in Washington, title insurers are not required to abide by their filed rates, and (3) the overcharge allegedly extracted from plaintiff by defendant does not constitute a violation of RESPA.

The Court has reviewed the pleadings submitted by the parties for and against the motion and has participated in oral argument with counsel and is otherwise informed in the premises. The complaint fails

to state a violation of RESPA. The Court declines to accept supplemental jurisdiction of state claims. Therefore, the Court need not address the issue of jurisdiction as to claims arising outside the State of Washington. Defendant's motion to dismiss on the pleadings is **GRANTED**.

## BACKGROUND

According to the complaint, in October of 1998, plaintiff obtained a mortgage loan on his home in the principal amount of $83,800. At closing, plaintiff was required by the lender to purchase a lender title policy in the amount of the note on his home. (Complaint, Dkt. #1, ¶17) On or about December 26, 2006, plaintiff refinanced the prior loan by obtaining a new loan in the principal amount of $201,500. Plaintiff was again required to purchase a lender title policy. The lender title policy was issued by the defendant. Plaintiff was required to pay a premium in the amount of $705. Because the policy was issued in connection with a refinance, plaintiff alleges that defendant was required to sell the insurance at a 50% discount ("reissue rate"), according to rates filed by defendant with the Washington Insurance Commissioner. *Id*. at ¶¶18 and 19. Plaintiff further alleges that the overcharge in the amount of $350.50 was split between the defendant and the title agent that issued the policy. *Id*., ¶19.

The complaint acknowledges that the defendant was the underwriter of the subject policy and that the title agent issued the title insurance commitment and conducted the title examination to identify liens on the property prior to the policy's issuance[1]. *Id*., at ¶¶ 8 and 9. Relying on regulations and interpretive statements issued by HUD, plaintiff alleges in the complaint that by charging more than the discounted premium rates for a refinanced loan, defendant charged, to the extent of the excess, a fee that was "not for services actually furnished or performed." He alleges a violation of §8(b) of RESPA, 12 U.S.C. §2607(b). *Id*., at ¶¶ 42 and 43.

Plaintiff seeks restitution of the overcharge, treble damages pursuant to §8(d)(2) of RESPA, injunctive relief and attorneys' fees. He seeks this relief on behalf of himself and all those similarly situated in Washington, Oregon, Michigan and Tennessee. Each of these states purportedly have rate statutes for title insurers that require a discounted premium for title insurance issued pursuant to a refinanced

---

[1] At oral argument, counsel for defendant conceded that a separate fee may have been charged for the title examination but not for the title insurance commitment. Nevertheless, the complaint clearly concedes that both the defendant and the agent provided a valuable and necessary service in connection with the title policy. The preliminary commitment stage performed by the agent is where the work is done and the underwriting by defendant is where the risk is undertaken.

mortgage. *Id.,* ¶¶ 12-14.

On March 31, 2008, defendant moved to dismiss on the pleadings pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Because the Court clearly has jurisdiction over the plaintiff's individual RESPA claim, the Court will focus only on defendant's Rule 12(b)(6) motion. With regard to the RESPA claim, defendant argues that plaintiff's admission in the complaint that the defendant and its title agent both actually performed services in connection with the issued title policy proves fatal to his claim under Rule 12(b)(6). This Court agrees.

## **LEGAL STANDARD**

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). Thus, all facts in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto. *Id*. The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed. R. Civ. P. As the Supreme Court recently observed, while a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). The rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face. *Id.* at 1974.

## **DISCUSSION**

Section 8(b) of RESPA provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. §2607(b).

In light of the plain language of the statute and given plaintiff's acknowledgment that both the defendant and its agent performed some service in connection with the issued policy, it would appear obvious that plaintiff cannot make out a claim for a RESPA violation. Plaintiff shifts the argument, however, and asserts that because the fee charged for the title insurance was excessive in relation to the rate filed by

defendant with the insurance commissioner, to the extent of the excess, no service was actually performed, either by the defendant or its agent. Plaintiff urges the Court to defer to interpretive analysis issued by HUD in 2001 which provides in pertinent part:

> This Statement of Policy reaffirms HUD's existing, long-standing interpretation of Section 8(b) of RESPA. . . . Section 8(b) prohibits the giving or accepting of any portion, split, or percentage of any charge other than for goods or facilities provided or services performed; it is intended to eliminate unearned fees. . . .
>
> The regulations also make clear that a charge by a *single service provider* where little or no services are performed is an unearned fee that is prohibited by the statute. 24 CFR 3000.14(c). . . . *[A] single settlement service provider* violates Section 8(b) whenever it receives an unearned fee.
>
> The Secretary, therefore, interprets Section 8(b) of RESPA to prohibit all unearned fees, including, but not limited to, cases where: (1) Two or more persons *split a fee for settlement services, any portion of which is unearned;* or (2) one settlement service provider marks-up the cost of the services performed . . .; or (3) one service provider charges the consumer a fee where no, nominal, or duplicative work is done, or the fee is in excess of the reasonable value of goods or facilities provided or the services actually performed.

RESPA Statement of Policy 2001-1, 66 Fed. Reg. 53052, 53058-59 (Oct. 18, 2001) (emphasis added).

The Court declines to give deference to the HUD interpretive policy statement. The question of what, if any, deference to give to HUD's interpretation of Section 8(b) is resolved according to the two-step process outlined in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, at 842-43 (1984). In step one of that process we consider whether Congress has clearly spoken in RESPA Section 8(b) to the issue of overcharges. "If the intent of Congress is clear, that is the end of the matter; for the courts as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. To ascertain Congress's intent, we begin with the statutory text because if its language is unambiguous, no further inquiry is necessary. *See Zuni Pub. Sch. Dist. v. Dept. of Educ.*, 127 S. Ct. 1534, 1543 (2007). If the statutory language is ambiguous, however, we will resort first to canons of statutory construction, and, if the statutory meaning remains ambiguous to legislative history. If we still cannot conclude that Congress has directly addressed the precise question at issue, we will proceed to *Chevron* step two which instructs us to defer to an agency's interpretation of the statute so long as it is reasonable. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. at 843-44.

This Court's reading of the statute forces it to the conclusion that Section 8(b) is not a price control

statute and that any splitting of a unitary fee into "reasonable" and "unreasonable," "earned" and "unearned" portions would convert the statute into something the legislature never intended. In case after case, courts have determined that nothing in RESPA creates a scheme of permissible settlement fees or a regulatory system to enforce such fee. See, e.g., *Kruse v. Wells Fargo Home Mortgage, Inc.,* 383 F.3d 49 at 57 (2d. Cir. 2004) ("Section 8(b) did not impose price controls"); *Boulware v. Crossland Mortg. Corp.*, 291 F.3d 261 at 268 (4th Cir. 2002) ("RESPA was meant to address certain practices, not enact broad price controls"); *Krzalic v. Republic Title Co.,* 314 F.3d 875 at 881 (7th Cir. 2002) ("RESPA is not a price-control statute"); *Wydler v. Bank of Am., N.A.,* 360 F. Supp. 2d 1302 at 1308; *Friedman v. Market St. Mortgage Corp.,* 2008 U.S. App. LEXIS 5848 at 18; *Martinez v. Wells Fargo Bank, N.A.,* 2007 U.S. Dist. LEXIS 27388 at 18. Nothing in the language of Section 8(b) authorizes courts to divide a charge into what they or some other person or entity deems to be its "reasonable" and "unreasonable" components. Whatever its size, such a fee is "for" the services rendered by the institution and received by the borrower. *Kruse*, at 56.[2]

The legislative history supports this reading of the statute. During the enactment process for RESPA, "Congress considered and explicitly rejected a system of price controls for fees[s.]" *Kuknyo v. Calumet Fed. Sav. & Loan Ass'n,* 763 F.2d 269, 271 (7th Cir. 1985); *see also Kruse*, 383 F.3d at 56-57 (discussing proposed bill). Congress did not intend to use RESPA as a means of "fixing [the] rates for real estate settlement charges[.]" *See* S. REP. NO. 930866 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6545, 6549-50. Such price fixing "would infringe on an area that has historically been of State or local concern and, in some instances, would duplicate existing State regulatory schemes." *Id*.

Instead of adopting a price-control system, Congress directed HUD to report "whether Federal regulation of the charges for real estate services in federally related mortgages is necessary and desirable."[3] Congress never enacted such a regulatory system, and it eventually repealed its directive to HUD as

---

[2] Plaintiff asserts that cases decided in the Northern District of Texas support his interpretation of Section 8(b). The Court disagrees. Each case cited by plaintiff (*Patino v. Lawyers Title Ins. Corp.,* 2007 WL 4687748 (N.D. Tex. 2007); *Mims v. Stewart Title Guar. Co.,* 521 F. Supp. 2d 568 (N.D. Tex. 2007); *Hancock v. Chicago Title Ins. Co.,* 2008 U.S. Dist. LEXIS 8621 (N.D. Tex. 2008)) leaves as an open question, the issue of whether an agent receiving a portion of an excessive fee actually performed some service in connection with the issuance of the title policy. If these Courts followed plaintiff's theory, the mere extraction of an excessive fee would necessarily mean that, to the extent of the excess, no service was performed either by the insurer or its agent. No question of "for services actually performed" would ever arise and the statute would necessarily become a price control statute which the Texas Court acknowledges it is not.

[3] *See* Real Estate Settlement Procedures Act of 1974, Pub. L. No. 93-533, § 14(b)(2), 88 Stat. 1724, 1730 (1974).

"obsolete."[4]

Accordingly, "the failure of Congress to enact . . . [the proposed] price-control bill, coupled with its charge to HUD to produce a report on whether such legislation was advisable, provides a persuasive complement to [the] textually based conclusion that Congress did not intend [RESPA] to serve as a price-control mechanism." *Kruse*, 383 F.3d at 57.

## **CONCLUSION**

The issue before this Court is whether an excessive fee, split between service providers who each performed *some* work in connection with the service for which the fee was charged, constitutes a violation of RESPA. On this issue the statute is clear and unambiguous. So long as some work is performed by the recipient of the fee, or any portion thereof, RESPA Section 8(b) does not impose liability. Defendant's motion [Dkt. #28] is **GRANTED**. Plaintiff's federal claim under RESPA is **DISMISSED**. The Court declines to accept jurisdiction over plaintiff's supplemental claims. The Court need not decide the plaintiff's standing to represent putative class members in other states.

Dated this 10th day of October, 2008.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[4] *See* Economic Growth & Regulatory Paperwork Reduction Act of 1996, Pub. L. No. 104-208, § 2103, 110 Stat. 3009-401 (1997).